Good morning, Your Honors. May it please the Court. My name is Jenna Leighton-Jones. I represent Appellant E.A. Renfroe & Co. and I'd like to reserve two minutes for rebuttal. Your Honors, as you know, there are two overarching issues that this Court is being asked to decide. Number one, whether or not the District Court properly declined to enforce the subject employment agreement's choice of lock laws, which states that the agreement shall be governed and construed under the laws of Alabama. And number two, whether or not the District Court correctly concluded that the arbitration provision contained within that employment agreement is unconscionable and therefore unenforceable. Our position is that the District Court erred with respect to both of these issues and that had the District Court correctly applied the law, it would have enforced the choice of lock laws, it would have applied Alabama law to its interpretation of the arbitration provision, and it ultimately would have concluded that provision to be enforceable under Alabama law. Your Honors, as a preliminary matter, last week we requested that this Court take judicial notice of a recent decision by the California Court of Appeal, Quiros v. E.A. Renfroe. In that case, the California Court of Appeal... That was unpublished? It was unpublished, Your Honor. Was there a choice of law contest in that case? The trial court found that the choice of lock laws was enforceable, so the trial court looked at the agreement under Alabama law. But it was the exact same... But it's not the issue on appeal, right? That's not the issue? That was not the issue on appeal. The primary issue on appeal in that case is whether or not there was unconscionability under Alabama law. Right. But we wanted to make the Court aware of the California Court of Appeal's ruling with respect to the exact same agreement. Your Honors, with respect to the choice of law issue, this is obviously the antecedent issue that this Court or any Court looking at the enforceability of this agreement needs to decide. As this Court held in Bicorny v. Ketar, before a federal court may apply state law principles to determine the validity of an arbitration agreement, it must determine which state's laws apply. Do we go first to the restatement? Is that what we do? Is that what we do under California? They filed in California. We're in diversity. Do we look at the restatement? Certainly, Your Honor. I mean, I think that... The restatement says to look at the party's agreement. Correct. And the party's agreement says Alabama. Correct. And then there's a couple exceptions. I'm just watching your time tick away. So if we get to those exceptions, what's your analysis there, please? Sure. Well, I think, you know, our main contention here is that the Court erred in its interpretation of the San Manigo case. It seemed to apply the San Manigo case. It read the San Manigo case to say that if an arbitration provision is unconscionable under California law, then there is substantial injustice in enforcing a separate choice of law provision. So setting aside what the district court did, again, because of your time, could you tell me what your analysis is when you go to the restatement and the party's contract in Alabama law? Then the restatement has a couple of exceptions. So how do you think it ought to have gone? Certainly, Your Honor. We think that the court, the district court, should have used the Nedloyd analysis, which is what most courts use and what I believe is incorporated in the restatement that looks at the three factors. The first factor is whether or not there's a substantial connection between the chosen state to the parties or to the claim. The second factor is whether or not the chosen state has a law that's contrary to any fundamental policy in California. And the third factor is whether or not California has a materially greater interest in adjudication of the dispute than the chosen state. Doesn't this case just basically come down to whether the clauses or Alabama law is fundamentally inconsistent with the policy of California? Your Honor, that was what the district court held. The district court said that because Alabama's general contract unconscionability principles are slightly different than those in California, that that meant that there was a conflict in the fundamental policy of both states. But we would ask this court to look at the district court case of Hahn v. Samsung, which we cited in our brief, wherein the district court explicitly rejected the idea that if there is any difference between California's general unconscionability principles and the chosen forum state, then that automatically means that California law should be applied. In that case, the district court — Nobody says automatically, right? The question is whether California — I mean, you have to look at the state. Was Hahn — did Hahn involve Alabama? The Hahn case involved Texas, Your Honor. Okay, so it doesn't really tell us much, right? We'd have to look and see how close the Texas provision is to Alabama's. Well, Your Honor, I think with respect to the choice of law issue in the Hahn case, the plaintiffs were arguing that because kind of the general contract principles in Texas would have arguably enforced — led to enforcement of the arbitration provision, whereas California's kind of general unconscionability principles would not have, because of that distinction, it was basically unfair to enforce the choice of law clause, and therefore California law should be applied. But the district court in the Hahn case kind of rejected that idea and said simply because California law might produce a more favorable result does not mean that a valid choice of — otherwise a valid choice of law clause should not be enforced. That sounds perfectly unremarkable, that you don't just look at the outcome. You look at the two policies and see whether they're fundamentally different. And in this case, it seems to me that the question Alabama asks as to unconscionability is quite different from the question that California asks. Your Honor, I would say that if we're looking at kind of general contract unconscionability principles, that Alabama law is different than California's. But I think what the court needs to do is look at whether or not there are any — if there's any conflict with respect to the actual provisions we're discussing. And in this case, for example, California does not have a fundamental policy prohibiting carve-outs for equitable relief. The state does not have a fundamental policy requiring the attachment or specification of arbitration rules. And this court doesn't have any fundamental policy against enforcing outbound form selection clauses. So I think that the court needs to look at what specific issues we're addressing to see whether or not there's any conflict in the policies of Alabama and California, not simply kind of to look at general contract principles and say, well, there's a conflict, so therefore we're going to apply California law. And why do you say that? Why isn't that exactly what you look at, look at general contract principles and see whether the two are fundamentally different? I thought that was the question. Well, I think — I mean, based on my analysis of the Hahn case and some other cases that have cited Hahn, my interpretation is that you don't look just at general contract principles. You have to look at the actual principles. Okay. I mean, I'd have to go back and look at Hahn and see whether you're right in what you say. But, you know, it's a district court case. We don't have to follow it. Why don't you persuade me that why looking at general contract principles isn't exactly the right thing to do? I mean, Your Honor, I would — I mean, if that's what the district court there did, I don't know that it did, but assuming it did, so what? So, Your Honor, as I said, you know, I don't think there's any dispute that California doesn't — Remember Judge Reinhart's question, right? What he said is, you know, what we have to look at, and I think that he's right. We have to look at a fundamental inconsistency between the California unconscionability statute law and Alabama. And to me, they look very different. To me, they look like different animals, like a cat and a dog. You know, they don't look at all the same. And I guess I judge that by general contract principles. I don't know why you wouldn't judge it by general contract principles. Sure, Your Honor. You know, I don't — certainly the district court cited to the Olbert case. That was also a district court case. And in that case, that court did kind of compare the general unconscionability standards of, I think it was Utah and California. And on that basis, it did say that the — because there was a conflict in sort of general unconscionability principles, that the choice of law clause was unenforceable. But I would argue, you know, to the extent that the Hahn case is actually a later case, I think it was a year later, it's another court looking at this issue. And it's, you know, a different court is saying you don't look at general unconscionability principles. You have to look at whether there's a fundamental conflict with respect to kind of the substantive provisions you're looking at, which in this case would be attachment of the AAA rules, the forum selection provision, and the equitable relief part of it. You know what Justice Scalia used to say? He says the older the case, the better. He says all these lawyers keep citing me recent cases. I don't want to see recent cases. I want to see old cases. I've always followed Justice Scalia's theories about talking to what they would have done in 1789. Can you tell what the founding fathers thought about this? Your Honor, unfortunately I'm not well versed in the founding fathers' opinions with respect to choice of law issues. So I apologize. Counsel, when you ticked off the factors that you're looking at, you didn't mention the cost provision or the prevailing party provision. Do you want to speak to those? Because those struck me as quite different. So would you like to speak to those?  Well, with respect to the prevailing party provisions, you know, our position in this case is that that provision doesn't even apply to what we're talking about. That provision only applies to disputes over interpretation of the contract itself, not to the underlying. So if I don't agree with you about that, but I appreciate your arguments in the brief. I read it carefully. If I don't agree with you about that, then what? Well, again, I don't think California has a, if we're talking about a, California doesn't have any public policy against allocating, you know, specifying prevailing party and attorney's fees provision in contracts. So, you know, under California Code of Civil Procedure 1021, parties can contract for attorney's fees. So your provision, it's not a fundamental conflict because there's freedom of contract is acknowledged. Correct. Okay. So let me ask you this. If California law does apply, I hear you loudly and clearly telling me you think it does not, if you lose that part of the battle, I think your position in the briefing is that parts of the, that the arbitration clause should be enforced, but some provision should be severed. Our position is that if the court declines to enforce the choice of law clause, that the agreement is still enforceable under California law. We don't believe that any provisions are unconscionable, but certainly if this court thinks that they are, that it should and does have discretion. What are their strongest arguments for unconscionability? Your Honor, you know, with, I know that the, the district court took issue with respect to the equitable relief carve-out. And I know that, for example, this, this court last year in the Publon versus C.H. Robinson case found that a one-sided equitable relief carve-out was unconscionable. So I think certainly they would, they would argue that case. And they're going to argue prevailing party, right? Sure. Yep. And they're going to argue, the district court was also concerned about the AAA rules not being specified, but I, I think you've got a pretty good response to that. Is there a problem? Is there a problem severing? At some point, you know, there's only so much you can cut off. Sure. Prune. But have you thought about that, whether or not the arbitration clause is still enforceable if some of these provisions are severed? Sure. We absolutely still think it's enforceable. You know, the first paragraph of the arbitration agreement sets forth the party's agreement to resolve all disputes arising from the employment relationship by severance. It sets forth that the AAA rules are going to apply. It sets forth the duties of the arbitrator. You know, this issue with the equitable relief provision, that's actually an entirely separate section of the agreement. So our feeling is that that potentially could easily be severed. Your opponent argues that your client has gone back and forth over whether you would insist upon the forum selection clause of Alabama. Yeah. Your Honor, I don't believe we've gone back and forth. We've made it clear that we're willing to waive the forum selection provision, and if Ms. McFadden would like to arbitrate her claims in California, we're happy to arbitrate. So severing, that's not a problem as far as you're concerned, because you don't think it's in the game here. No. It's not part of the issue? It's kind of a mood issue, at least from our perspective, certainly. And again, you know, with respect to the AAA rules, we believe that as written that that section is enforceable. So certainly if all we're talking about is prevailing party or equitable relief, those can be severed. So what happens if we sever the prevailing party provision and the cost provision? They objected to both. If we sever those, we can't augment the contract by making stuff up. Would the parties be left with the AAA rules for trying to decide who, how those costs and fees are allocated, or what would be the answer? Well, I think with respect to the underlying wage claims, you know, the California Labor Code articulates a scheme for prevailing party and attorney's fees. And we've never disputed that those provisions are going to apply with respect to the underlying. You haven't? No. Certainly with respect to the underlying wage claims, we've never disputed that California law applies. In any arbitration, whether it's here, whether it's in Alabama, we're going to be adjudicating the underlying wage claims pursuant to California law. Okay. So you would agree then that the plaintiff shouldn't be left in a position, assuming California law applies, she shouldn't be left in a position where she could, in the arbitration, have to pay costs that she wouldn't have had to pay pursuant to the California statutory scheme? Well, Your Honor, I think pursuant to the California statutory scheme, which allows parties to contract for fees in contracts, in theory she could be required to pay any fees associated with Runford's attempt to enforce the arbitration agreement. But certainly we're not arguing that she's going to be tasked with paying any fees that she wouldn't have to pursuant to California's Labor Code with respect to the underlying claims. Thank you. Okay. Your Honor, sorry. Oh, it looks like I have 30 seconds left. So unless the Court has any other questions, I'll reserve the remainder of my time. Thank you. Thank you, Your Honors. May it please the Court. John Manier for the plaintiff in Appali. I first want to address the issue of severance, the last issue that was discussed. I do want to emphasize that it is an abuse of discretion standard that applies to the District Court's decision not to sever the illegal provisions from the agreement here. And in this case, they didn't really try to show that there was an abuse of discretion. All Runford really argued was that, well, another court could have come to a different conclusion. That's fall far short of abuse of discretion. Here you have some problems with any severance. For one thing, this agreement does not require Renfro to arbitrate anything. We made that showing, I think, fairly clearly. There's nothing in there that says Renfro has to arbitrate. There's the provision that says the arbitration will only address specific claims by employee and will not address class claims, collective claims or claims held by others. Now Renfro saying, well, that's not what it means. It really, it doesn't mean that it won't address Renfro claims. It only means that it won't address claims by other employees. That's not what it says. And there's nothing in here that says that Renfro has to arbitrate its claims. All of the arguments you're making now assume California law applies. I would say that they would apply if, even if the court were to find Alabama laws applies, which it should not, as we've, we've argued. And that's why the Kuro's case, the unpublished decision by the state court of appeal is not on point because it doesn't discuss choice of law and it only analyzes it under Alabama law for whatever reason. How should the choice of law decision go? How does that outline go? Okay. So our analysis, we believe that there's, there's two different types of analyses that can apply and that under both analyses, the Alabama choice of law provision cannot be enforced in this case here, because it is a contract of adhesion under California law under state Supreme court precedent. The if there's substantial injustice, that would that would issue if the choice of law is imposed, then it must be struck down. Don't we start with the restatement and California under the restatement California looks at the party's contract and the, and here the contract specifies Alabama law. Are you, are you dropping down below that or where are you in your decision tree? I believe the restatement analysis is the second alternative analysis. I don't think we have to follow the restatement. Your briefs doesn't seem to suggest that there's a salmon, Diego analysis and then there's this other restatement analysis that though they're just sort of optional. Well, it isn't just optional. Salmon Diego follows Washington mutual, which is the state Supreme court case. What's the rule we should follow? Well, because it's an adhesion contract. Okay. I don't mean to keep interrupting you, but that's almost, you know, we enforce an awful lot of arbitration agreements and everybody comes to the podium saying this is an adhesion contract. We've entered into arbitration provisions all the time. You know, when we sign receipts for things, sure, you know, renting cars or buying airplane tickets. So they're almost always are very often their contracts of adhesion. That doesn't necessarily get you there, but we're discussing the choice of law. I'm trying to, I'm trying to. And so your position is that because this arbitration provision is the contract of adhesion, then what does that mean for the choice? Then it won't be enforced. If to enforce it would result in substantial injustice. I mean, that is the standard in San Diego and in Washington mutual. I don't want to get too hung up on that because even if the restatement analysis applies under the Ned Lloyd case, the result is the same. It's the tripartite analysis. There's no dispute that Alabama has a substantial connection to Renfro. That's all you need for the first prong. Right. So we didn't dispute it. By the way, in their reply brief for the first time, Renfro cites the IBM versus Bajoric case, I think. I'm not sure I'm pronouncing it correctly. And they claim that in that case, they found that New York had a stronger connection than California did to the controversy. This court actually explicitly did not reach that issue. It only. Okay. But this is the part you're not contesting. So, and your time is ticking. So. Okay. Sure. Okay. Of your tripartite. The tripartite. So the second part and the third part are what the dispute is. So, and I was discussing Bajoric on the third part going out of order because Renfro claimed that Bajoric stands for the proposition that, that New York was found to have a stronger connection to the case than California. In fact, that's not what this court held. It only held that New York satisfied the first prong, which is not disputed as Your Honor just noted. So we believe that it's quite clear here that California has a stronger connection to this case for the reasons discussed. Well, don't we look at that as of the time of contracting and as of the time of contracting, your client lived in Texas, right? She was going to be this kind of roving insurance adjuster. And I don't think the assignment to California had even happened yet. Am I wrong? Well, the assignment hadn't happened. The employment really hadn't happened. I mean, we can, there's really, as at the time of contract, I think that's when we look, that's the first part. Do you disagree with that? I do disagree. I think that, I think because the question becoming the contract was signed, she was still in Texas. There's no question about that. But. Yeah. I mean, Renfro was the one who devised this system. It's, I never heard of any other company doing this, but my question is pretty straightforward and I'm trying to get at, doesn't California law say that when we're making these decisions, we look as of the time of contracting. I think in the abstract, that is a correct statement of the law, but, but this is a very different animal because you have a contract that is physically signed at one point. But, you know, Renfro tried to argue that while she was an employee, when she signed the contract, well, no, she wasn't doing any work. She hadn't been assigned. She wasn't getting paid. There was nothing. They then call her out of the blue and say, we've got this job in California, take it or leave it. And they gave her this very short timeframe to accept it. Well, at that point, that's when we would argue that the contract was really made because at that point, there was really no employment for the contract to apply to. I mean, they might never have given her an assignment and then this whole thing would be theoretical. So we think that under these facts, that California became, and it was the only state where she ever worked. It was the only assignment they ever gave her. I don't think Renfro can sort of engineer this by basically making you sign the contract before you even know where she's going to work or if she's going to work. There's no guarantee. Why not? I mean, she signs the contract and let's say six months pass, she just doesn't get an assignment. And she says, look, I have a contract. I haven't gotten an assignment. You guys breached. She might not have a good claim. She might. Why couldn't she at that point sue and say, I want to start getting paid my wages because you guys have an agreement with me to give me employment. So, and at that point you would see whether that's up to arbitration. You would. Well, at that point, that wouldn't be our case, of course. I mean, that would be a very different case. You think I don't know that? I don't. You think I missed that detail? I thought that was your case. I wanted to make sure you knew that I knew that. But, yes, of course. You think I think you're stupid? No. I hope not. I think you'd have to be a real moron for me to think that you didn't understand that. Okay. Well, in any event, I don't think you're a moron. I appreciate that. So, why can't she sue on the contract before she gets an assignment? That's the question. I mean, she signs the contract. There are certain explicit obligations under that. I can see why she gets sued. Or let's say they say, you've got to go to, let's think of some place really bad like Alabama. I'm just kidding. I mean, some place, you know. Raven Tick? Well, and she says, no, I, you know, that's not where I want to go. And there's a dispute about that. Wouldn't that then be litigated under the contract? Well, if the claim was, as you have presented it, Your Honor, then I think that, that, that Renfro would have a far better argument. The, the problem. It doesn't, it doesn't matter. I mean, so long as there's some claim she can bring on the contract, then your whole argument that there was no contract until she gets an assignment falls, you know, disappears. You know, it's just wrong. Well, there wasn't an actual, there was no employment relationship, I would argue. I mean, there was a contract. Maybe, maybe a different lawyer would argue there was an employment relationship. Look, I signed a contract. I'm bound. I can't take other employment now because I'm bound by, by this contract. And you guys don't give me an assignment. Or you don't give me an assignment any place that's, that I like to go to. Well, we know that's not the case, Your Honor, because as Renfro concedes, Ms. McFadden continued to work up until the time she accepted the assignment that she got from Renfro. And in fact, Renfro makes a point to note that Ms. McFadden. You're now, you're now arguing that case. You're now arguing why the case would not be any good. Let's say she brought a claim like that under a more foolish lawyer than you. Wouldn't that be litigated under the contract? And wouldn't the same issue arise as arbitration? Well, again. It's at least theoretically possible that he could bring a claim before she gets an assignment. Theoretically. So, so your argument that, oh, she doesn't really have a contract and she gets an assignment, you're just wrong. Well, again, I don't want to be too pedantic here, but there may, there's a contract, but there's no. You can never be too pedantic. Okay. There's no employment relationship. She was not a Renfro employee until she starts, she accepts an assignment with Renfro. And we would argue, certainly we would argue that it's substantially unjust to pin her to a choice of law provision that at the time she signs it is completely theoretical. I mean, we have no way of knowing what Renfro is thinking at that time. It's simply up to them. And. What, what, this part, now you're missing. You have no way of knowing what Renfro is thinking when. When, when they force her to sign the contract, they are saying they didn't contemplate that she would be going to California. Of course, they contradict that by saying that they contemplated that she was going to go, she was going to be assigned to different places. Well, she could be, she, she could be, and she could either accept or reject an assignment to whatever place Renfro wanted to send her. Okay. So your time is ticking. Can I, can, may I ask you if the arbitration provision is enforceable, your, what? Oh, go ahead. Oh, that was just, that was a frown, frowny face. Well, it's just a hypothetical. It's just a hypothetical. You have a sort of a hierarchy, I think, and I'm, or at least I'm asking you for one of provisions that you think ought to be severed. Well, all the ones we've discussed should be severed. I mean, certainly the, the form has to be severed. If they're not trying to enforce it, they're not trying to enforce the form selection. Right. Okay. And there should be no posh shifting as under this agreement. I mean, that's, that's really to me. Okay. And prevailing party. Right. They work together. Okay. What about the triple A rules? Um, well, the problem that you have with the triple A rules is that they don't specify which of the triple A rules apply. Now, I, I'm aware of the Balthazar decision, so merely failing to give her the triple A rules doesn't go anywhere unless you can point to something in those rules to say, well, you hid this terrible provision in these triple A rules, and if you'd only given it to her, then she would have known. That doesn't apply here. I recognize that. But this is different than Balthazar, because Balthazar specified that it's the employment rules that apply. Here, they don't. They just say triple A rules. And one of the cases we cited noted that there are up to 100 different employment or different rules for arbitration that the triple A has. So I wouldn't, so this is an employment contract. Why wouldn't it be the employment rules? Well, I, are there, is there more than one set of employment related triple A rules? I'm not aware of one, and I would assume that that's where triple A internally would send it. If you just send it to triple A, I, I don't know if that's something that can be. So, so my question is. So my question had to do with sort of the hierarchy of provisions. And are there others that you want to talk about? What about the provision equitable relief and the ability of Renfro to avail itself of some judicial remedies? Well, Renfro hasn't established facts that would, that would give it the right to that carve out. I mean, you can't just say, in general, employers have a right to a carve out, so we get one too. Well, are they seeking any? Are they seeking any? Well, not in this case, so it may not apply. But, but again, you can't augment the agreement to require Renfro to arbitrate, because, I mean, now they're saying, well, of course we're bound. That's not what the contract says. And that was the problem in the Armendariz case, is that you'd have to augment the contract to say it's a mutual obligation to arbitrate. It just doesn't say that. There is nothing in that agreement that says they have to arbitrate. And, and, and that's a fundamental problem with this agreement. I just don't think it can be enforced, even if Alabama law were to apply. So, and, of course, the cost in prevailing party provisions would have to go, regardless of what the arguments under the CCP 1021 are. I mean, the provision, to me, shows, to us, it shows that the agreement is permeated with an unlawful purpose, to give Renfro an advantageous forum, not because of some neutral belief that alternative dispute resolution is a good thing. They're trying to play to their advantage. And that provision screams that out loud and clear. Any other questions? Thank you, counsel. Thank you, Your Honors. Your Honors, just very briefly on the choice of law issues. I just want to be clear on what the substantial injustice standard is. Under Washington Mutual Bank and Samaniego and the restatement, the idea is that a party can invalidate an adhesive choice of law provision if its inclusion in the contract was obtained by improper means, such as fraud, misrepresentation, or duress. In this case, there's no evidence that the choice of law provision itself was obtained by improper means. With respect to the attachment of the AAA rules under California law, just last year in the Tompkins versus 23andMe case, this court upheld an arbitration clause that did not specifically specify which set of AAA rules apply. In that case, the contract said any dispute shall be resolved by final and binding arbitration under the rules and auspices of the American Arbitration Association. And this court found that provision to be enforceable. And finally, with respect to the argument that this agreement does not require Renfro to arbitrate anything, I think, you know, as we've spelled out in our papers, I think that's disingenuous. The first paragraph of the arbitration provision clearly states that any dispute arising in connection with the agreement or any complaint or controversy related in any way to the employment relationship shall be resolved exclusively by binding arbitration. If you go to the governing law clause in the contract, which is section 16, it says each party waives all rights to a trial by jury in any suit, action, or proceeding involving this agreement, the employment relationship, or compensation. And finally, the California Court of Appeal just last year in the Wynn case, which we cited in our Rule 28J letter, found that a contract which stated that any claims should be arbitrated meant that both the employer and employee had to arbitrate their claims. Unless the court has any further questions, I will submit. Thank you, Your Honor. The case is adjourned. You will be submitted.
judges: Reinhardt, Kozinski, Christen